IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHANNON LEIGH LOVE,

               **Plaintiff,**

    v.

OFFICER BARRY C. OLIVER,
Individually as an Atlanta Police
Officer,

               **Defendant.**

                     **1:05-cv-0561-WSD**

## ORDER

This is a Section 1983 action in which Plaintiff Shannon Leigh Love
("Plaintiff") alleges that Atlanta Police Officer Barry C. Oliver ("Defendant")
maliciously instituted and maintained a criminal prosecution against Plaintiff in
violation of her constitutional rights.  It is before the Court on Defendant's Motion
for Summary Judgment [28].

## I.    BACKGROUND

Plaintiff is employed as an Assistant District Attorney in the Fulton County
District Attorney's office.  (Pl.'s Statement of Material Facts ("PSMF") ¶ 9.)  She
began her career as an Assistant District Attorney in the Fall of 2002.  (Id. ¶ 10.)
Defendant has been a police officer with the Atlanta Police Department since

November 1999, (PSMF ¶ 32), and, in September 2001, he was assigned to work at Hartsfield-Jackson International Airport. (Def.'s Statement of Material Facts ("DSMF") ¶ 2.)

On December 7, 2002, Plaintiff drove her mother, Ms. Tancey Love, to the airport. (PSMF ¶ 51.) Plaintiff pulled her Ford Explorer to the curbside outside the terminal. (DSMF ¶ 20.) This area was designated for picking up or dropping off passengers or luggage. (Id. ¶ 3.) Plaintiff's mother has been disabled since 1996 and has difficulty walking long distances and carrying heavy objects; she exited the SUV and went into the terminal to find a skycap to carry her luggage. (PSMF ¶¶ 23, 26, 52; DSMF ¶ 21.) After Plaintiff's mother went to find skycap assistance, Defendant approached Plaintiff's vehicle, told her she could not park at the curbside and instructed her to move the SUV. (DSMF ¶¶ 23-24; PSMF ¶¶ 58, 60.) The parties dispute the details of the conversation and what followed.

Defendant claims Plaintiff refused to move her vehicle and asked Defendant to identify himself. (DSMF ¶¶ 25-26.) Defendant claims Plaintiff then got out of the SUV, and reached out to touch Defendant's identification badge. (Id. ¶¶ 27-28.) Defendant claims Plaintiff was very upset, screamed profanity at him,

scratched his arm, ripped his badge from his uniform, and threw it to the ground. (DSMF ¶¶ 29, 31; Oliver Dep. at 55.)  Defendant handcuffed Plaintiff.

Plaintiff claims she attempted to explain to Defendant that her mother was disabled and she simply was waiting for her to return from inside the terminal. Defendant purportedly responded:  "I don't care about your mother; I don't give a damn about your mother."  (PSMF ¶¶ 63-64.)  Plaintiff claims she never cursed or raised her voice, and calmly exited her vehicle to demand that Defendant identify himself.  (Id. ¶¶ 66-67.)  She claims she was not aware that Defendant was an Atlanta Police Officer and that he refused to identify himself.  (Id. ¶ 68.)  Plaintiff claims when she pointed at Defendant's badge, Defendant responded by punching her in the chest, pushing her, shoving her onto the hood of her vehicle and handcuffing her.  (Id. ¶¶ 73-74.)  She claims she never touched his badge.  (Id. ¶ 76.)[1]

---

[1]  Plaintiff submits the affidavit of Alonzo Thomas in support of her version of the relevant events.  (Thomas Aff., attached as Ex. D to Pl.'s Resp. to Def.'s Mot. for Summ. J.)  Mr. Thomas testified that Plaintiff, after exiting her vehicle, appeared upset but that she was not rude.  (Thomas Aff. ¶ 16.)  He further testified she never made a threatening gesture towards Defendant and did not touch him or his badge before he grabbed and handcuffed her.  (Id. ¶¶ 16-17, 22.)

The parties agree that Defendant took Plaintiff into custody and, after several hours, Plaintiff was transported to the Clayton County Jail.  (DSMF ¶ 30; PSMF ¶ 85.)  They also agree that Plaintiff was charged with five offenses:  (1) simply battery on police officer, (2) obstruction of officer, (3) disorderly conduct, (4) improper parking and (5) damage to government property.  (DSMF ¶ 34.)

On December 8, 2002, Plaintiff made her first appearance in the Clayton County Magistrate Court.  (DSMF ¶ 37; Pl.'s Resp. to DSMF ¶ 37.)[2]  The Magistrate Judge dismissed the felony charge of damage to government property and remanded Plaintiff on the four remaining misdemeanor charges.  (DSMF ¶ 37.)  The Magistrate Judge set bond at $6,000 on the remaining charges, and Plaintiff made bond that same day.  (DSMF ¶ 37; Pl.'s Resp. to DSMF ¶ 37; PSMF ¶ 93; Tancey Love Dep. at 53-55.)

As a result of this incident, Plaintiff was suspended from her job for two months, one of which was without pay.  (PSMF ¶ 99.)[3]  On February 28, 2003, the

---

[2]  Defendant characterizes this appearance as an "arraignment," and Plaintiff characterizes it as a "probable cause and bond hearing."  (DSMF ¶ 37; Pl.'s Resp. to DSMF ¶ 37.)

[3]  Two days after her arrest, Plaintiff wrote a memorandum to her superiors at the Fulton County District Attorney's Office in which she stated:  "To say that I regret it is quite an understatement.  It is unfortunate two law enforcement people

Solicitor General of Clayton County dismissed three of the remaining charges

against Plaintiff; the improper parking charge was not dismissed and Plaintiff paid

the fine.  (DSMF ¶¶ 39, 41; PSMF ¶ 106; Dismissal, attached as Ex. 14 to Def.'s

Mot. for Summ. J.)

## II.    <u>DISCUSSION</u>

Plaintiff filed this case on February 28, 2005, asserting a single claim under

42 U.S.C. § 1983 for malicious prosecution in violation of her Fourth Amendment

rights.  (<u>See</u> Compl. [1] ¶¶ 28-32.)  The parties completed discovery and, on

December 30, 2005, Defendant moved for summary judgment on Plaintiff's claim.

Defendant moves for summary judgment on the grounds that (i) Defendant had

probable cause to arrest Plaintiff, (ii) there is no evidence that Defendant acted

with malice, (iii) all of the charges against Plaintiff were not dismissed, (iv)

Defendant is entitled to qualified immunity, and (v) Plaintiff was not seized within

the meaning of the Fourth Amendment.

---

let the situation escalate to the point that it did.  And frankly, therefore, we are both
remiss."  (DSMF ¶ 38.)

A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  <u>Id.</u>

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  <u>United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.</u>, 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."

Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must

not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d

at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party," summary judgment for the moving party is

proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986).

     B.    Defendant's Motion for Summary Judgment

Section 1983 does not itself confer any substantive rights.  See 42 U.S.C.

§ 1983; Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Instead, it provides a

private cause of action for individuals whose rights under the United States

Constitution have been violated under color of state law.  That is, it provides "a

method of vindicating federal rights elsewhere conferred."  See Graham, 490 U.S.

at 393-94.

Plaintiff asserts a Section 1983 claim for malicious prosecution.  This

Circuit "has identified malicious prosecution as a violation of the Fourth

Amendment and a viable constitutional tort cognizable under § 1983."  Wood v.

Kesler, 323 F.3d 872, 881 (11th Cir. 2003).  "To establish a federal malicious

prosecution claim under § 1983, a plaintiff must prove (1) the elements of the

common law tort of malicious prosecution, and (2) a violation of her Fourth
Amendment right to be free from unreasonable seizures." <u>Kingsland v. City of
Miami</u>, 382 F.3d 1220, 1234 (11th Cir. 2004).[4]  It is a two-part showing and to
avoid summary judgment for Defendant on her claim, "[Plaintiff] bears the burden
of proving that she was seized in relation to the prosecution, in violation of her
constitutional rights." <u>Id.</u> at 1235.

The Court first addresses whether Plaintiff was "seized" within the meaning
of the Fourth Amendment.  The parties' analysis of this requirement was
superficial at best.  Plaintiff argues she was seized within the meaning of the
Fourth Amendment.  The seizure, she asserts, "began with a 'legal process,'
namely [Defendant]'s decision to 'swear out' 'Warrantless Arrest Probable Cause
Affidavits' to the Magistrate Court of Clayton County on the challenged charges."
(Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 13-14.)  Defendant argues:  "[T]he
Eleventh Circuit holds that normal conditions of pretrial release do not constitute a
continuing seizure barring some significant continuing deprivation of liberty.  No

---

[4]  The elements for the common law tort of malicious prosecution include (1)
a criminal prosecution instituted or continued by the defendant, (2) with malice and
without probable cause, (3) that terminated in the plaintiff's favor and (4) that
caused damage to the plaintiff.  <u>Wood</u>, 323 F.3d at 881-82.

such deprivation occurred in this case; mere 'anxiety and inconvenience' on

Plaintiff's part is not actionable."  (Def.'s Mot. for Summ. J. at 12.)

To establish a Section 1983 claim for malicious prosecution,

> the deprivation of liberty -- the seizure -- must have been effected "pursuant to legal process." . . .  Ordinarily this "legal process" will be either in the form of a warrant, in which case the arrest itself may constitute the seizure, or a subsequent arraignment, in which case any post-arraignment deprivations of liberty (such as being bound-over for trial) might satisfy this constitutional requirement.

Singer v. Fulton County Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995) (citations

omitted).

> In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted. Thus, the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest.[5]

Kingsland, 382 F.3d at 1235 (quotation and citation omitted); see also Mejia v.

City of New York, 119 F. Supp. 2d 232, 254 n.26 (E.D.N.Y. 2000) (holding

---

[5] "Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest, while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty."  Singer, 63 F.3d at 117 (citations omitted).  Plaintiff has elected not to assert a false arrest claim in this action.

"plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not pursuant to legal process, *i.e.*, not one that arose from malicious prosecution as opposed to false arrest") (quotation and citation omitted); Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001) ("The tort of malicious prosecution permits damages for a deprivation of liberty -- a seizure -- pursuant to legal process. Generally, the offending legal process comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure).") (citations omitted).

The Eleventh Circuit's decision in Kingsland is instructive. In Kingsland, the plaintiff was involved in a car accident. The authorities' response to the accident resulted in Plaintiff being handcuffed, transported to jail and charged with driving under the influence. 382 F.3d at 1225. Plaintiff's father posted a $1,000 bond the next day, and she was subsequently arraigned on charges of careless driving, reckless driving and driving under the influence. Id. Plaintiff made two trips from New Jersey to Florida to appear in court on these charges. Id. The charges against her were dropped months later after drug tests came back negative.

-10-

Id.  Thereafter, plaintiff filed suit under Section 1983 for false arrest and malicious prosecution.  Id.

The District Court granted summary judgment for defendants on both claims on the grounds the officers had probable cause to arrest plaintiff and were entitled to qualified immunity.  On appeal, regarding the federal malicious prosecution claim, the Eleventh Circuit found there was a sufficient dispute regarding the elements of the common law tort of malicious prosecution to submit it to a jury.[6] However, the Court found "plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment . . . ," id. at 1235, and, therefore, the arrest did not constitute a seizure pursuant to legal process.  The Court opined:

> While we sympathize with [plaintiff]'s anxiety and
> inconvenience, . . . we cannot go so far as to say that the
> conditions of her pretrial release -- which did not
> constitute a significant deprivation of liberty --
> constituted a seizure violative of the Fourth Amendment.
> Because [plaintiff] cannot prove a violation of her Fourth

---

[6]  The Eleventh Circuit reversed the District Court's decision on the false arrest claim, finding that the District Court failed to recognize plaintiff's claims, supported factually, that the evidence against her was fabricated.  The Court of Appeals thus found that the District Court erroneously failed to accept plaintiff's version of the facts as true.  The District Court's findings that the officers had probable cause and were entitled to qualified immunity thus were deemed error.

> Amendment right to be free from unreasonable seizures,
> she does not have a cognizable claim for malicious
> prosecution, and the defendants are entitled to summary
> judgment on the merits of such claim.

Id. at 1236 (citation omitted).

Because a claim for malicious prosecution in violation of Plaintiff's Fourth Amendment rights requires a seizure effected pursuant to legal process, the Court must determine when the legal process in this case began.  See Wood, 323 F.3d at 882 n.15 ("[T]he federal right to be free from malicious prosecution is actually a description of the right to be free from an unlawful seizure which is part of a prosecution.") (quotation omitted).  The legal process for Fourth Amendment seizure purposes in relation to a malicious protection claim will be either in the form of a warrant or a subsequent arraignment.  See, e.g., Singer, 63 F.3d at 117; Kingsland, 382 F.3d 1235.[7]

---

[7]  These triggering events to invoke legal process are similar to what invokes process under Georgia law in a malicious prosecution context.  Georgia law defines prosecution in the context of a claim for malicious prosecution as follows: "an inquiry before a committing court or a magistrate shall amount to a prosecution."  O.C.G.A. § 51-7-42.  In Branson v. Donaldson, 426 S.E.2d 218, 221 (Ga. Ct. App. 1992), the court found the court proceedings against plaintiff "r[o]se to the level of a 'prosecution'" under O.C.G.A. § 51-7-42.  The court stated: "[T]he proceeding in which, *after [plaintiff]'s arrest*, he was brought before a magistrate who asked questions and then bound his case over for the grand jury and set bond was . . . sufficient 'prosecution' to provide the basis for a malicious

Plaintiff claims process began with Defendant's "decision to 'swear out' 'Warrantless Arrest Probable Cause Affidavits' to the Magistrate Court of Clayton County."  That is not enough to meet the Fourth Amendment seizure requirement here.  Plaintiff was arrested without a warrant at approximately 7:20 p.m. on December 7, 2002, and she was held for several hours at the airport precinct before being transported to the Clayton County Jail.  Defendant Oliver executed two Warrantless Arrest Probable Cause Affidavits, setting forth the facts of her arrest and claiming she committed five violations of Georgia law.  The next day, the Magistrate Court dismissed the felony charge, set a total bond of $6,000 on the remaining misdemeanor charges and Plaintiff made bond that same day.  On February 27, 2003, the Solicitor General entered a dismissal of all the charges brought against Plaintiff but the one for improper parking, which Plaintiff resolved by paying a fine.

Plaintiff claims the legal process began with the swearing out of the Warrantless Arrest Probable Cause Affidavits by Defendant and that her subsequent detention pending her appearance before the Magistrate Judge the next

prosecution action."  Id. (emphasis added).  See also Orban v. City of Tampa, No. 804CV1904T23MAP, 2006 WL 890149 (M.D. Fla. Apr. 5, 2006) (analyzing Florida law to determine when prosecution was initiated).

-13-

day constitutes a deprivation of liberty under the Fourth Amendment.  The

probable cause affidavits, however, were signed only by Defendant and not by a

Magistrate Judge or prosecutor.  In fact, there is no evidence the affidavits ever

were presented to a prosecutor or judicial officer and if they were it appears they

were presented the following day.[8]  Under the facts here, the Court concludes the

legal process in this case did not begin until Plaintiff appeared before the

Magistrate Judge on December 8, 2002.  See Kingsland, 382 F.3d at 1235 ("In the

case of a warrantless arrest, the judicial proceeding does not begin until the party is

arraigned or indicted."); Oden & Sims Used Cars, Inc. v. Thurman, 301 S.E.2d

673, 675-76 (Ga. Ct. App. 1983) (finding no evidence of a "prosecution" as

defined by the Georgia code when plaintiff was arrested and held in custody for

over six hours before being released).

The Court necessarily looks to Plaintiff's alleged deprivations of liberty

occurring after Plaintiff's appearance before the Magistrate Judge to determine if

---

[8] In Plaintiff's Statement of Material Facts to which there Remains a
Genuine Issue to be Tried [31], Plaintiff does not contend the affidavits were
presented to any judicial official before the December 8, 2002 proceeding before
the Magistrate Judge.  The affidavits themselves were not executed in the "Order"
section, thus evidencing that no judicial official ever considered she should be
detained.

she can establish a seizure within the meaning of the Fourth Amendment.  See

Singer, 63 F.3d at 117 (holding plaintiff subject to warrantless arrest, to

successfully pursue a Section 1983 claim of malicious prosecution, "must show

some post-arraignment deprivation of liberty that rises to the level of a

constitutional violation"); Nieves, 241 F.3d at 54 (noting that plaintiffs' "arrests --

which antedated any legal process -- cannot be part of the Fourth Amendment

seizure upon which they base their section 1983 claims").  After her appearance

before the Magistrate Judge, Plaintiff was released on bond.  Although she

contested her charges, and purported to suffer from stress and anxiety, these events

do not constitute a seizure for Fourth Amendment purposes.  See Kingsland, 382

F.3d at 1235-36 (finding requirement to pay a $1,000 bond and defend herself in

court insufficient to constitute a seizure under the Fourth Amendment; "[no courts]

have been willing to conclude that normal conditions of pretrial release constitute a

'continuing seizure' barring some significant, ongoing deprivation of liberty, such

as a restriction on the defendant's right to travel interstate."); Nieves, 241 F.3d at

56 (noting that the first time plaintiffs were "subject to legal process" was when the

criminal complaints against them were issued and finding allegations that they

subsequently (i) suffered stress and damaged reputations, (ii) appeared in court,

and (iii) endured trial "insufficient to establish a seizure within the meaning of the

Fourth Amendment"); <u>Sinquefield v. Clay County</u>, No. 4:04-CV-18, 2005 WL

2217440 (M.D. Ga. Sept. 12, 2005) (finding no "seizure" arising from malicious

prosecution because plaintiff presented no evidence of a significant deprivation of

liberty after her indictment).[9]  "While [the Court] sympathize[s] with [Plaintiff]'s

anxiety and inconvenience, assuming the facts in her complaint to be true, [the

Court] cannot go so far as to say that the conditions of her pretrial release -- which

did not constitute a significant deprivation of liberty -- constituted a seizure

violative of the Fourth Amendment." <u>Kingsland</u>, 382 F.3d at 1236.[10]

The incident at the airport was unfortunate and regrettable.  That it involved

two law enforcement officials is surprising and disappointing.  Law enforcement

_____

[9]  Plaintiff cites <u>Whiting v. Traylor</u>, 85 F.3d 581 (11th Cir. 1996), for the proposition that she has established a "seizure" pursuant to "legal process" that violates the Fourth Amendment.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 13-14.).  <u>Whiting</u> does not apply here.  The arrests at issue in <u>Whiting</u> were made pursuant to a warrant and an information, and, therefore, the arrests themselves were made in relation to the prosecution and constituted the "seizure."  The Court in Whiting noted that where an arrest is made before the commencement of a criminal proceeding, "the most analogous tort might be that of 'false arrest.'"  <u>Id.</u> at 585 n.8.

[10]  The requirement that Plaintiff establish a seizure "is necessary to ensure that the § 1983 plaintiff has suffered a harm of constitutional proportions -- *i.e.*, a harm cognizable under § 1983."  <u>Singer</u>, 63 F.3d at 116.

personnel are characteristically objective, composed and restrained even in difficult circumstances.  Those characteristics were missing here.  The Court understands the impact of the incident, especially how it might have been perceived by citizens who witnessed it.  The Court's duty, however, is to evaluate whether the incident, viewed in the light most favorable to Plaintiff, gives rise to a federal claim for malicious prosecution.  Because Plaintiff has not presented evidence rising to the level of a Fourth Amendment deprivation of liberty, the Court concludes she does not have a cognizable claim under Section 1983 for malicious prosecution.[11]  The Court expresses no opinion on whether Plaintiff has available viable state-law remedies.

## III.   <u>CONCLUSION</u>

For the reasons state above,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [28] is **GRANTED**.

---

[11]   Because the Court finds Plaintiff's claim fails for this reason, Plaintiff's claimed disputed issues of fact, including whether Defendant had probable cause to arrest Plaintiff or whether Defendant acted with malice, are not material.

**SO ORDERED** this 23rd day of June, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE